**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **3-CR-15-214** |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **ARTHUR TAYLOR and** | : | |
| **JAMIELL SIMS,** | | |
| | : | |
| **Defendants** | | |

## MEMORANDUM

Before the court in this case with charges of sex trafficking and distribution of illicit drugs are eight pre-trial motions filed by defendant Arthur Taylor, a/k/a "Arty", and twelve pre-trial motions filed by defendant Jamiell Sims, a/k/a "Millz." The motions of both defendants have been briefed. For the reasons set forth below, the court will **GRANT IN PART** and **DENY IN PART** the pre-trial motions of both defendants as discussed below.

## I.    BACKGROUND

By way of relevant background, on January 30, 2018, Taylor and Sims, along with others, were indicted and charged in a Second Superseding Indictment. Sims was charged with eleven counts, namely, Counts 1, 2, 3, 4, 5, 7, 8, 9, 10, 11, and 12. Taylor was charged with eight counts, namely, Counts 1, 7, 8, 9, 10, 11, 12, and 13. Both defendants were basically charged with: conspiracy to distribute in excess of 100 grams of heroin, crack cocaine, molly, Percocet, and marijuana, 21 U.S.C. §846; possession with intent to

1

distribute molly, 21 U.S.C. §841(a)(1); conspiracy to commit sex trafficking by force, fraud, and coercion, 18 U.S.C. §1594(c); four substantive counts of sex trafficking by force, fraud, and coercion, 18 U.S.C. §1591(a) and (b)(1) and 2; and one count of conspiracy to interfere with commerce by robbery, 18 U.S.C. §1951(a). With respect to the charge of conspiracy to commit sex trafficking by force, fraud, and coercion in Count 7, this Count also contains a section that specifies 15 overt acts which were allegedly committed in furtherance of the conspiracy as well as the relevant dates that the overt acts were committed. In Counts 8-11, defendants are charged with substantive offenses of sex trafficking by force, fraud and coercion against the individual victims. (Doc. 504).

On January 31, 2018, defendants were arraigned and pled not guilty to all counts of the Second Superseding Indictment against them. The defendants were then detained.

On February 19, 2018, defendants filed their pre-trial motions. (Taylor, Docs. 542-549), (Sims, Docs. 551-562). The motions of both defendants have been briefed.

The court will now address the motions *seriatim* and since the majority of the motions of each defendant are essentially the same, they will be addressed jointly. The court also directs that any of its rulings regarding the pending pre-trial motions of Taylor and Sims also apply to Jordan Capone, the third remaining defendant in this case, even though she did not file any such

motions.

The final pre-trial conference was conducted on the record on April 19, 2018, and the trial was continued at the request of Taylor to July 23, 2018.

## II.    DISCUSSION

### 1. Motions for Disclosure of Confidential Informants

Both Taylor and Sims filed motions for disclosure of confidential informants, Docs. 542, 551, and basically contend, in broad terms, that disclosure of the confidential informants is necessary to prepare a defense, to test the informants' credibility, ascertain informants' relationship to the defendants and the others charged, discover the entire scope of that relationship, and to discover exculpatory information.

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." U.S. v. Rivera, 524 Fed.Appx. 821, 826 (3d Cir. 2013) (quoting Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623 (1957)). "'The scope of the privilege is limited by its underlying purpose," ... which is 'the furtherance and protection of the public interest in effective law enforcement.'" Id. at 826-27 (internal citations omitted). "The Government may be required to disclose an informant's identity when '(1) the [informant's] possible testimony was highly relevant; (2) it might have disclosed an entrapment; (3)

it might have thrown doubt upon the defendant's identity; and (4) the informer was the sole participant other than the accused, in the transaction charged.'" Id. at 827 (citations omitted).

It is within the district court's discretion in deciding a motion to compel the disclosure of the confidential informant's identity. U.S. v. Goode, 486 Fed.Appx. 261, 264 (3d Cir. 2012). The Third Circuit in Goode, 486 Fed.Appx. at 264-65, then explained:

> The Supreme Court has held that the government's interest in its informant's confidentiality "must give way," Roviaro v. United States, 353 U.S. 53, 61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), only if the informant's identity is "relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause," Id. at 60–61. We have held that the defendant bears the burden of showing why he has a "specific need" for the disclosure of the informant's identity. United States v. Jiles, 658 F.2d 194, 197 (3d Cir.1981) (citations omitted). "[M]ere speculation" that the informant's testimony would be "helpful to [a] defendant's case is not sufficient." Id. (citations omitted).

Here, as the government recognizes, neither defendant meets his burden of showing a specific need for the informants' identities, and they only generally speculate that the testimony of the informants would help their cases and possibly reveal exculpatory evidence. The court finds that defendants have not satisfied any of the above stated factors specified in *Rivera*. Rather, the court finds that defendants seek the informants' identities to conduct a fishing expedition to try and discover information and that this is not a sufficient basis to grant their motions. *See* United States v. Bangaroo, 2017 WL 3495702 (M.D.Pa. Aug. 15, 2017).

4

Moreover, based on the court's knowledge about the facts of this case from the co-defendants who have pled guilty, the court finds that the government also has good reason to protect the identities of its informants for their safety and, the safety of the informants is another reason why defendants' motions will be denied. *See* Bangaroo, 2017 WL 3495702, *6.

Thus, if any informant will be called by the government to testify, the court will only require the government to disclose his/her identity immediately before the informant testifies. The court however will direct the government to supply defendants with any information related to confidential informants, including any and all statements that they have made recorded in any format, at the time that the government is required to disclose Jencks material.

As such, since defendants have failed to offer sufficient evidence to show that the disclosure of the identities of the informants at this time is necessary to prepare their defense and since their need for disclosure does not outweigh the government's interests in keeping the informants confidential, Taylor's and Sims' motions for disclosure of confidential informants, Docs. 542, 551, are **DENIED**, except to the extent stated above.

Sims also filed a separate motion for disclosure of exculpatory evidence and evidence bearing on the credibility of government witnesses. (Doc. 560). Sims requests that the court to direct the government to provide him exculpatory evidence and impeachment evidence under *Brady* and *Giglio*.

The government represents that it is aware of its responsibilities under

Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963), and United States v. Giglio, 405 U.S. 150, 92 S.Ct. 763 (1972), regarding its trial witnesses and that it will comply with the mandates of those cases and their progeny. No doubt that under *Brady* the government has an obligation to disclose all evidence favorable to defendants, including both exculpatory evidence and impeachment evidence. *See* United States v. Moreno, 727 F.3d 255, 262 (3d. Cir. 2013). Also, it is clear that under *Giglio*, "the government must disclose materials that go to the question of guilt or innocence as well as materials that might affect the jury's judgment of the credibility of a crucial prosecution witness." United States v. Friedman, 658 F.3d 342, 357 (3d Cir. 2011). The government also has a continuing obligation to disclose any such evidence to defendants. "While the failure to timely disclose exculpatory evidence is not *ipso facto* reversible error so long as the defendant is not 'prevented by lack of time to make needed investigation,' exculpatory evidence nevertheless should be disclosed without undue delay." U.S. v. Yawson, 2014 WL 3401663, *2 (W.D.Pa. July 10, 2014) (internal citations omitted). The district court can direct when *Brady* material has to be disclosed to defendants. Id. (citation omitted). Thus, if the government is aware of any *Brady* exculpatory evidence that was not already turned over to the remaining three defendants, the court directs the government to provide such evidence to defendants immediately or as soon as it is aware of it. *See id.*

Additionally, "[w]hile *Brady* impeachment material ordinarily need be

6

disclosed only 'in time for its effective use at trial,' the Third Circuit Court of Appeals also encourages adherence to a long-standing policy of promoting early production of all types of *Brady* material 'to ensure the effective administration of the criminal justice system.'" Id. (internal citations omitted). Based on the facts of this case of which the court is well-aware, the court will direct that the government provide remaining defendants with *Brady* impeachment material at the appropriate time under the Jencks Act.

As such, Sims' motion for disclosure of exculpatory evidence and evidence bearing on the credibility of government witnesses, (Doc. 560), will be **GRANTED IN PART** as specified above.


### *2. Motions for Full Discovery Under Rule 16*

Taylor and Sims filed motions for full discovery and inspection, Docs. 543, 554, pursuant to Rule 16. Defendants also seek, in part, statements of co-conspirator, including all statements given to law enforcement agencies regarding the case.

In response, the government contends that Rule 16 does not require to disclose the names of its witnesses prior to trial. The government also indicates that it "has provided Rule 16 discovery in this case, including the recorded statement the defendant gave to the FBI after his arrest; police reports related to an incident involving the defendant[s] and a prostitute at a hotel; the defendant[s'] prior record[s]; police reports from the state of Maine

related to the case; cell phone data, including videos, photos, messages related to the case; and hotel records." Further, the government represents that it will continue to provide Rule 16 discovery to defendants as it acquires it.

In his reply, (Doc. 602), Taylor contends that the discovery which the government has provided to defendants as of March 23, 2018 did not implicate him in any criminal activity charged in the pending Indictment. In his brief, (Doc. 567), Sims states that he "requests that the Government make an affirmative search of all its records and information and those of all related Government agencies and repositories of possible evidence responsive to [his discovery] requests, as well as all state agencies involved."

In U.S. v. Yawson, 2014 WL 3401663, *1 (W.D.Pa. July 10, 2014) , the court stated:

> Generally, governmental disclosure of evidence in criminal cases is governed by Federal Rule of Criminal Procedure 16(a). The United States Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas delineated in Rule 16(a)(1) "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." United States v. Ramos, 27 F.3d 65, 68 (3d Cir. 1994). As a general matter, these other areas are limited to the Jencks Act and materials available pursuant to the "*Brady* doctrine." Id.

The court will **GRANT** defendants' motion for full discovery under Rule 16 and direct the government to immediately provide defendants with all material to which they are entitled under Rule 16 if it has not already done so.

Moreover, as part of its continuing duty under Rule 16, the government recently provided the remaining defendants with additional discovery materials, including the names and partial names, with addresses and other contact information redacted, of several persons who may possess relevant information pertaining to the charges against the defendants. (*See* Doc. 616). Taylor did not indicate in his recent motion for a continuance of the FPTC and trial if the new discovery materials he received from the government implicates him in the charged offenses. (Doc. 616). In any event, while Taylor requested that the government provide him with additional information in his reply brief, he has now been recently provided with additional materials.

Additionally, to the extent that defendants request the statements made by co-conspirators, the court finds that this information does not fall under Rule 16 discovery and thus, the government is not required to provide such statements to defendants at this time. In U.S. v. Cheatham, 500 F.Supp.2d 528, 538 (W.D.Pa. 2007), the court stated "[d]istrict courts of the Third Circuit have consistently held that Rule 16 does not provide for the discovery of a co-conspirator's statement.") (citations omitted). The court in Cheatham, id. at 538-39, then "agree[d] with these courts and [found] that Rule 16 does not provide for the Government's production of a co-conspirator's statements to a defendant because such statements are not the defendant's own statement under Rule 16(a)(1)(A)."

Thus, insofar as defendants' motions request information that does not

come under Rule 16(a), the court denies defendants' requests for early or pre-trial disclosure, including for the statements made by co-conspirators. Rather, these requests constitute Jencks material which the government states it will provide to the defendants at the appropriate time pursuant to the provisions of the Jencks Act,18 U.S.C. §3500. Therefore, the court will only direct the government to provide any statements made by co-conspirators to defendants at the proper Jencks time.

### 3. Motions for Early Disclosure of Jencks Act Material

Sims moves for early disclosure of Jencks material, (Doc. 555), and Taylor also essentially makes the same request.

In Yawson, 2014 WL 3401663, *3, the court explained the Jencks Act:

The Jencks Act provides that after a government witness testifies, and upon motion by the defendant, the government must produce "any statement ... of the witness in the possession of the United States which relates to the subject mater as to which the witness has testified." 18 U.S.C. §3500(b); United States v. Weaver, 267 F.3d 231, 245 (3d Cir. 2001). The purpose of Jencks disclosure "is to provide the defendant with an opportunity to review the witness's statements for any possible inconsistencies that he might use to impeach the witness." United States v. Maury, 695 F.3d 227, 248 (3d Cir. 2012).

Pursuant to 18 U.S.C. §3500(a), "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." Accordingly, "the government has no obligation to produce Jencks material until the witness has testified." Maury, 695 F.3d at 248.

Thus, "there is no authority by which th[e] court can compel the government to provide Jencks Act statements prior to the time any government witness has testified on direct examination at trial." Id.; *see also* U.S. v. Grier, 2012 WL 5614087, *5 (W.D.Pa. Nov. 15, 2012) ("The plain language of the Jencks Act, 18 U.S.C. §3500, the overwhelming precedent ..., and our court of appeals well-settled position on the matter makes clear that the Court cannot mandate disclosure prior to the day on which the witness testifies at trial."); Bangaroo, 2017 WL 3495702, *17-*18.

As such, the court will **DENY** defendants' requests for early disclosure of Jencks material, including any actual statements made by co-conspirators to defendants. The court will only direct the government to disclose all Jencks material at the appropriate time in accordance with the Act, as specified above.[1]

### 4. Motions for Pre-Trial Hearing to Determine the Existence of a Conspiracy

Both Taylor and Sims, (Doc. 544, Doc. 559), basically move for a James hearing. Specifically, defendants move the court to conduct a pre-trial hearing to determine the existence of a conspiracy and the admissibility of the statements of co-conspirators. No doubt that the government can admit

---

[1]It should be noted that at the April 19, 2018 FPTC, however, the government advised that, in its discretion, it has in fact provided the remaining defendants with early Jencks material, including summaries of interviews by law enforcement agents.

statements of co-conspirators pursuant to a hearsay exception under Fed.R.Evid. 801(d)(2)(E). The court will not conduct a pre-trial hearing since there is no requirement under the Rules of Evidence for the government to first prove the existence of a conspiracy prior to the admission of any statement.

The court in Grier, 2012 WL 5614087, *5, explained:

> Federal Rule of Evidence 801(d)(2)(E) provides an exception to the hearsay rule to admit into evidence statements of a co-conspirator made during the course of and in furtherance of a conspiracy. Before any such statement may be admitted, however, the proponent must establish by a preponderance of the evidence that (i) the conspiracy existed; (ii) both the defendant and the declarant were members of the conspiracy; and (iii) the statement was made in the course of the conspiracy and in furtherance of the conspiracy. United States v. McGlory, 968 F.2d 309, 333 (3d Cir. 1992). In determining whether the statement is admissible as a statement of a coconspirator, the court may consider the statement itself. Bourjaily v. United States, 483 U.S. 171, 181, 107 S.Ct. 2775 (1987).

"Due to the complexity of some conspiracies, it may be difficult, if not impossible, for the government to establish the conspiracy and the participation of the co-conspirators before seeking admission of a co-conspirator's statements." Grier, 2012 WL 5614087, *6 (citing United States v. Gambino, 926 F.2d 1355, 1360 (3d Cir.), *cert. denied*, 502 U.S. 956 (1991)). In such cases, "the co-conspirator's statements can be conditionally admitted into evidence, provided that the government establishes the existence of the conspiracy and each conspirator's participation therein before it closes its case." Id. However, to avoid a later problem at trial if the court

12

conditionally admits a co-conspirator's statement and then the government subsequently fails to meet its burden to admit the statement by showing that the statement was made in furtherance of the conspiracy, "district courts in some circuits have conducted pretrial hearings, referred to as 'James hearings,' to [first] determine the existence of a conspiracy." Id. (citing United States v. James, 590 F.2d 575 (5th Cir. 1979)).

"The United States Court of Appeals for the Third Circuit has never required district courts to hold a James hearing, and has cautioned that the procedure of conditionally admitting conspiracy evidence 'should be carefully considered and sparingly utilized by the district courts.'" Id. (citing United States v. Continental Group, 603 F.2d 444, 457 (3d Cir. 1979); *see also* Gambino, 926 F.2d at 1360–61; Ammar, 714 F.2d at 245–47). Regardless, a James hearings is not "mandatory." Id. (citing United States v. Williams, 264 F.3d 561, 576 (5th Cir. 2001) (stating that the decision to hold a James hearing is left to the sound discretion of the trial judge)); *see also* Continental Group, 603 F.2d at 456 (Third Circuit held that "the order of proof at trial is a matter committed to the discretion of the trial judge.").

As the government states in its brief, (Doc. 582), "[t]he trial court's determination that a conspiracy existed need only be supported by 'slight evidence' in order to admit co-conspirator statements." (citing United States v. Provenzano, 620 F.2d 985, 999 (3d Cir. 1980). The government also states that a James hearing "would involve not only a 'mini-trial,' but also would

reveal witnesses identities which the government has sought to protect."

Thus, based on its discretion and based on its knowledge of the facts of this case from the guilty plea hearings of Sims' and Taylor's co-defendants, the court will **DENY** defendants' motions for a James pre-trial hearing to determine the existence of a conspiracy and the admissibility of statements of alleged co-conspirators. *See Grier supra*. Also, as mentioned above, the court will **DENY** defendants' motions insofar as they seek pre-trial disclosure of co-conspirator statements based on its above ruling regarding defendants Rule 16 motions. Further, the order of the witnesses that the government calls at trial and the order of its evidence will not be modified. At trial, "the Court [will] conditionally admit the evidence [regarding statements of co-conspirators, including hearsay evidence] and later evaluate whether the government has met its obligation to prove the existence of the conspiracy and the co-conspirators involvement therein." Id. at *6.

### 5. *Motions to Disclose Grand Jury Transcripts*

Taylor and Sims, (Doc. 545, Doc. 557), move for grand jury transcripts and seek to inspect grand jury minutes and to be provided with related documents pursuant to Fed.R.Crim.P. 6(e)(3)(E)(ii).

"As a matter of public policy, grand jury proceedings generally must remain secret except where there is a compelling necessity." United States v. Procter & Gamble, 356 U.S. 677, 682 (1957).

The court in U.S. v. Bunty, 617 F.Supp.2d 359, 372 (E.D.Pa. 2008), discussed the disclosure of grand jury transcripts and stated:

> "The decision to permit disclosure [of grand jury transcripts] is within the discretion of the trial court judge who must assess whether the need for disclosure overbalances the requirements of secrecy." United States v. Mahoney, 495 F.Supp. 1270, 1272 (E.D.Pa. 1980). Federal Rule of Criminal Procedure 6(e)(3)(E) provides, inter alia, that "[t]he court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter: (i) preliminarily to or in connection with a judicial proceeding; (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury ..." Fed.R.Crim.P. 6(e)(3)(E)(i)-(ii).

"In order to be entitled to grand jury information during discovery in a criminal matter, a defendant must demonstrate to the Court a 'particularized need' for the information that overrides the secrecy afforded to the grand jury." United States v. Mariani, 7 F. Supp. 2d 556, 564 (M.D.Pa. 1998) (citation omitted). "[T]he burden is on the party seeking disclosure to show a 'particularized need' that outweighs the need for secrecy", and "vague allegation[s], however, [do] not demonstrate a particularized need for disclosure." United States v. Li, 2017 WL 590275, *6 (M.D.Pa. Feb. 14, 2017) (internal citations omitted); Nguyen, 314 F.Supp.2d at 616 (noting that the party seeking disclosure cannot satisfy its burden with "conclusory or speculative allegations of misconduct");United States v. Donahue, 2012 WL 2871800, at *2-*3 (M.D.Pa. July 12, 2012) (conclusory allegations do not demonstrate particularized need).

The court finds that defendants failed to meet their burden by showing a particularized need to obtain grand jury transcripts of trial witnesses prior to trial. *See* Li*,* 2017 WL 590275, \*6. Thus, the court will **DENY IN PART** defendants' motions for pre-trial disclosure of the grand jury transcripts of trial witnesses. (Doc. 545, Doc. 557). However, the court will direct the government to immediately provide defendants with the grand jury transcripts of only their testimonies if they testified in the grand jury. The court will also direct the government to provide defendants with the grand jury transcripts for any witness who is going to testify at trial during the government's case-in-chief at the appropriate time in accordance with the Jencks Act.

## 6. *Motions for Disclosure of Rule 404(b) and Rule 609 Information*

Taylor and Sims, (Doc. 546, Doc. 561), move to compel the government to produce any information it will use at trial pursuant to F.R.E. 404(b) and F.R.E. 609. Defendants seek the court to order the government to provide them with written pre-trial notice of any uncharged misconduct evidence it intends to use at trial. They appear to request such notice be provided to them at this time.

In Yawson, 2014 WL 3401663, \*4, the court discussed Rule 404(b):

> While "evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," such evidence may be admissible for another purpose, such as proving "motive, opportunity, intent, preparation, plan, knowledge,

identity, absence of mistake or lack of accident," provided that, upon request by the defendant, the government must provide reasonable notice in advance of trial, or during trial for good cause, of the general nature of any such evidence it intends to introduce at trial. Fed.R.Evid. 404(b).

Evidence is admissible under Rule 404(b) if; (1) it has a proper purpose under Rule 404(b); (2) it is relevant under Rules 401 and 402; (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice under Rule 403; and (4) the court charges the jury to consider it only for the limited purpose for which it is admitted. United States v. Vega, 285 F.3d 256, 261 (3d Cir. 2002) (citing Huddleston v. United States, 485 U.S. 681, 691–92, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)).

The government is required to provide notice of its intention to introduce evidence pursuant to Rule 404(b). "While Rule 404(b) provides no specific time limit for pretrial notice", the time frame should "constitute reasonable notice." Id. The government does not indicate whether it has determined if any 404(b) evidence will be used against any defendant. However, it indicates that it will provide formal notice of its intent to use any Rule 404(b) evidence within the time that the court finds reasonable. Thus, the government contends that defendants' motions for Rule 404(b) information should be denied as premature since it will provide defendants with notice of uncharged conduct within a reasonable time period set by the court. The government states courts have found that seven to ten days prior to trial is sufficient notice of intent to use Rule 404(b) evidence and the court concurs that this is adequate notice. *See id.*

The government also points out that:

17

Rule 404(b), however, does not apply to evidence that is intrinsic to the conspiracies. The Third Circuit Court has explained that intrinsic evidence includes evidence that directly proves a charged offense and encompasses uncharged acts performed contemporaneously with the charged crime if those acts facilitate the commission of the charged crime. United States v. Green, 617 F.3d 233, 249 (3d Cir. 2010). The court in *Green* explained that most, if not all evidence that relates to the background of the case, that shows the relationships of the players or that "completes the story," is admissible as intrinsic evidence. United States v. Williams, 647 Fed.Appx. 144, 147 (3d Cir. 2016)(not precedential); United States v. Fitzgerald, 496 Fed. Appx. 175, 2012 WL 4017807 (3d Cir. 2012) (not precedential); United States v. Hynson, 451 Fed. Appx. 91, 2011 WL 5519618 (3d Cir. 2011) (not precedential).

Indeed, "[t]he Court may admit evidence relating to uncharged misconduct when the evidence is intrinsic to the charges at issue." U.S. v. Ligambi, 890 F.Supp.2d 564, 574 (E.D.Pa. 2012) (citing United States v. Green, 617 F.3d 233, 249–50 (3d Cir. 2010)). "[E]vidence is intrinsic if it 'directly proves' the charged offense", which includes an act that is part of the charged offense. Id. (citations omitted). Further, "uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime." Id. (citations omitted). Thus, any evidence of uncharged conduct of defendants that is intrinsic proof of the elements of the conspiracy charges in the Second Superseding Indictment, such as evidence of the structure and history of the conspiracy, is admissible at trial. *See id.* Additionally, "[a]ll evidence of uncharged misconduct, which does not fall into the parameters of intrinsic evidence, may be admitted under Rule 404(b) ...." Id. at 578. Of course, "[e]ven if [evidence is] admissible under

Rule 404(b), the Court must exclude evidence under Rule 403 where the probative value of the evidence is substantially outweighed by the risk of unfair prejudice." Id. at 579.

The court will **DENY IN PART** defendants' motions insofar as they seek disclosure of Rule 404(b) evidence at this time. Rather, the court finds that in this case reasonable notice is ten days and the government is directed to provide remaining defendants with notice of all Rule 404(b) evidence it will seek to use against them at least ten days prior to trial. Thus, the court will **GRANT IN PART** defendants' motions only to the stated extent regarding the 10-day pre-trial notice of Rule 404(b) evidence.

In Yawson, 2014 WL 3401663, *4, the court also discussed Rule 609:

Rule 609(a)(1)(B) provides that, for the purpose of attacking a testifying defendant's character for truthfulness by evidence of a criminal conviction, evidence that the defendant has been convicted of any crime punishable in the convicting jurisdiction by death or imprisonment for more than one year must be admitted if the court determines that the probative value of that evidence outweighs its prejudicial effect to the defendant. The rule also provides that evidence that any witness has been convicted of any crime must be admitted, regardless of punishment, "if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." F.R.E. 609(a)(2).

Additionally, "[t]he only advance notice requirement under Rule 609 is that the government must provide 'reasonable advance written notice' of its intent to use the evidence if 10 years have passed since the conviction or release from confinement for it, whichever is later." Id. at *5 (citing

Fed.R.Evid. 609(b))."Rule 609 permits evidence of a prior felony conviction to be offered to impeach a testifying witness. However, when the testifying witness is also the defendant in a criminal trial, the prior conviction is admitted only 'if the probative value of the evidence outweighs its prejudicial effect to that defendant.'" U.S. v. Caldwell, 760 F.3d 267, 286 (3d Cir. 2014) (citing Fed.R.Evid. 609(a)(1)(B)). The Third Circuit has held that this Rule "reflects a heightened balancing test" with a "predisposition toward exclusion" and, that "[a]n exception [to exclusion of the evidence] is made only where the prosecution shows that the evidence makes a tangible contribution to the evaluation of credibility and that the usual high risk of unfair prejudice is not present." Id. (citation omitted). "When offering a prior conviction to impeach a testifying defendant, the government bears the burden of satisfying the heightened balancing test set out in Rule 609(a)(1)(B)." Id. at 289.

The Third Circuit has "recognized four factors that should be considered when weighing the probative value against the prejudicial effect under this heightened test." Id. at 286. The four factors are: "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the [defendant's] testimony to the case; [and] (4) the importance of the credibility of the defendant." Id. at 286 (citing Gov't of Virgin Islands v. Bedford, 671 F.2d 758, 761 n. 4 (3d Cir. 1982)).

The government states that if defendants testify at trial, the government would seek to use any prior crimes of dishonesty as well as prior felony

convictions "for purposes of impeachment, with appropriate limiting instructions." The court will consider the *Bedford* factors at that appropriate time if defendants testify at trial. However, the court will direct the government to indicate to defense counsel, prior to trial, which, if any, of their prior convictions it would try to use for impeachment if any defendant decided to testify at trial, i.e., reasonable pre-trial notice. The court notes that the government has listed the prior criminal records of both defendants with respect to their more recent convictions in its briefs in opposition to defendants' pre-trial motions.

Thus, the court will **DENY** defendants' motions for immediate pre-trial notice of the government's intention to offer Rule 609 evidence. The motions are **GRANTED** only to the extent that the government is directed to advise defense counsel with reasonable pre-trial notice of defendants' prior convictions that will be used for impeachment if the defendant testifies at trial.

### 7. *Motions for Notice of the Government's Intention to use Hearsay Statements under Rule 807*

Taylor and Sims, (Doc. 547, Doc. 562), move to compel the government to immediately disclose any hearsay statements as an exception to the hearsay rule under F.R.E. 807 it will use at trial. Rule 807 is known as the residual exception. "The Residual Exception allows a hearsay statement to avoid exclusion by the rule against hearsay, even if the statement is not specifically covered by an exception in Rule 803 or 804, if certain criteria are

established." Li, 2017 WL 590275, *5 (citing Fed.R.Evid. 807(a)). "A statement introduced under Rule 807 'is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it.'" Id.

In response to defendants' motions, (Doc. 582 at 25), the government states that "[a]t this time, the government does not intend to offer a Rule 807 hearsay statement. Should circumstances change, it will provide reasonable notice to the defendant[s] prior to trial." The court is satisfied that the government will provide defendants with the requisite pre-trial notice if it will seek to offer evidence under Rule 807. As such, defendants' motions for immediate notice will be **DENIED**. *See id.*

### 8. *Motion for Bill of Particulars*

Taylor has filed a motion to direct the government to provide him with a Bill of Particulars pursuant to Fed.R.Crim.P. 7(f). (Doc. 548). In his motion, he seeks the following information:

> the date, time, location and manner in which Taylor joined the conspiracy if the agreement was express or implied; the specific nature of the agreement; the first act committed by the defendant pursuant to the agreement; all acts/statements of Taylor which indicate he had knowledge of the conspiracy and their time, dates, and locations; the exact words used by the defendant that show he joined the conspiracy; the identities of unnamed co-conspirators; all acts committed in furtherance of the conspiracy; any overt acts committed by the defendant; all

evidence that indicates the defendant had possession of controlled substances; all devices used in the conspiracy; all communications related to the defendant's participation in the conspiracy; and the date on which Taylor's participation in the conspiracy ended.

"The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense." Li, 2017 WL 590275, at *2 (citation omitted). "A bill of particulars 'is not to be used by the defendant as a discovery tool,' but rather is appropriate only when 'an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." Id. (internal citations omitted). Also, "[a] bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation." Id. (citation omitted).

Additionally, "a motion for a bill of particulars, which if granted requires the Government to 'give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation' of the allegations against him or her." United States v. Thomas, 2016 WL 3148204, *1 (E.D.Pa. June 2, 2016) (quoting United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985)(emphasis in original). "[T]rial judges must be allowed to exercise broad discretion in order to strike a prudent balance between the defendant's legitimate interest in securing information concerning

23

the government's case and numerous countervailing considerations ranging from the personal security of witnesses to the unfairness that can result from forcing the government to commit itself to a specific version of the facts before it is in a position to do so." Id. (quoting United States v. Rosa, 891 F.2d 1063, 1066 (3d Cir. 1989)). In considering a request for a Bill of Particulars, the court must be cognizant of the fact that "[a]s with the indictment, there can be no variance between the notice given in a bill of particulars and the evidence at trial." Id. at n. 1 (quoting United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985)).

In this case, the government has provided the remaining defendants with considerable discovery, including the recent discovery defendants received. Specifically, the government states that it provided Taylor with the discovery, "including police reports, the defendant's recorded interview with the FBI, hotel records, and cell phone evidence, including texts, instant messages, videos, and photographs." (Doc. 582 at 30). "A bill of particulars is not appropriate in a case such as this, where Defendant has been given substantial access to discovery." Id. (citing United States v. Urban, 404 F.3d 754, 772 (3d Cir. 2005) ("[A]ccess to discovery further weakens the case for a bill of particulars.")).

Moreover, the 22-page Second Superseding Indictment, which contains the elements of the offenses and the applicable dates, as well as many details of the offenses, including a "Manner and Means of the Conspiracy" section

and a list of 15 overt acts allegedly committed in furtherance of the conspiracy, provided defendants with sufficient information about the nature of the charges against them. The indictment also provided each defendant with adequate information detailing his/her involvement with the charged offenses. "In U.S. v. Rankin, 870 F.2d 109, 112 (3d Cir. 1989), the Third Circuit stated, "[a]n indictment is generally deemed sufficient if it: (1) contains the elements of the offense intended to be charged; (2) sufficiently apprises the defendant of what he must be prepared to meet; and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." (internal quotations and citations omitted)." *See also* Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (citation omitted); United States v. Olatunji, 872 F.2d 1161, 1168 (3d Cir. 1989). The court in *Rankin* also stated that "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." Id. (citations omitted).

Since the Second Superseding Indictment was sufficient and since the government provided Taylor and the other remaining defendants with sufficient discovery information to prepare for trial, the court will **DENY** Taylor's motion for a Bill of Particulars. (Doc. 548). *See* Li, 2017 WL 590275, *2-*3.

### 9. *Motions for Government's Expert Information*

Taylor and Sims have filed motions to direct the government to provide them with its expert information pursuant to Fed.R.Crim.P. 16(a)(1)(G). (Doc. 549, Doc. 556).

Rule 16(a)(1)(G) provides that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." *See* United States v. Walker, 657 F.3d 160, 175 (citing United States v. Davis, 397 F.3d at 178 ("[T]he government must disclose, upon a defendant's request, 'a written summary of any testimony that the government intends to use.'")). Also, the summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed.R.Crim.P. 16(a)(1)(G). Rule 16(a)(1)(G) "is intended to provide the defendant with 'a fair opportunity to test the merit of the expert's testimony through focused cross-examination.'" U.S. v. McNeil, 2010 WL 56096, *7 (M.D.Pa. Jan. 5, 2010) (citation omitted). Further, "the purpose of this disclosure is to provide defendant with an opportunity to challenge the expert's opinion and qualifications." Id.

In its response to defendants' motions, (Doc. 582 at 32), the government states that "[its] experts in this case will likely be limited to forensic analysts who searched and retrieved information from cellular phones

and similar devices. The government will provide the names of such witnesses, their credentials, and a summary of what they will testify about."

The court will **GRANT** defendants' motions and will direct the government to provide all remaining defendants with its expert information, including the names of the experts it intends to call in its case-in-chief, the curriculum vitae for each expert, and a summary of the experts' testimony.

The court will now discuss the remaining motions that were filed only by defendant Sims.

### 10. *Motion to Preserve Notes, Reports and Evidence and Motion to Produce and Preserve Tapes of Law Enforcement Interviews*

Sims filed a motion for the court to direct the government to preserve notes, reports and evidence, (Doc. 552), and a motion to direct the government to produce and preserve tapes of law enforcement interviews, (Doc. 553). Sims requests that the court order the government to preserve and to immediately provide him with handwritten notes made by witnesses, or made in interviews of witnesses or other persons with knowledge of relevant facts, regardless of whether such persons will be called at trial. In response, (Doc. 589 at 38), the government states that it "has requested the case agent to preserve all notes of interviews related to this case."

No doubt that "[t]he Government is already obligated to retain rough notes and the drafts of reports of its agents." Li, 2017 WL 590275, *7 (citations omitted). However, Sims is "entitled to discovery of any such notes

'only to the extent that [they] fall[ ] within the purview of *Brady* or the Jencks Act.'" Id. (citation omitted). "[N]otes made by witnesses or made by agents interviewing witnesses may constitute Jencks material. Id. (citing 18 U.S.C. §3500(e)). Also, some of the notes Sims seeks may also contain *Brady* material. To this extent, the court will adhere to its rulings regarding defendants' motions for *Brady* and Jencks materials and when these materials must be provided to defendants, which are addressed above, and will not be repeated.

Further, "to the extent [Sims] requests production of notes made by witnesses or government agents which do not constitute either Jencks or *Brady* material, the court concurs with the court in *Li, id.*, which found a lack of authority cited by defendant to support such a request. (citing Fed.R.Crim.P. 16(a)(2) (prohibiting generally the discovery or inspection of "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case")).

Thus, Sims' requests for immediate disclosure of the stated material, (Docs. 552 & 553), will be **DENIED**. This court, like the court in *Li, id.*, will also allow Sims "to renew his motion at trial 'subject to a specific showing that any particular rough notes or investigative reports not otherwise produced arguably may contain information falling within the scope of *Brady* and/or the

Jencks Act.'" (citation omitted).[2]

### 11. *Motion for Rule 12(b)(4)(B) Notice*

Sims filed a motion for notice pursuant to Rule 12(b)(4)(B) of any evidence the government intends to use in its case-in-chief that he is entitled to discover under Rule 16. (Doc. 558). Rule 12(b)(4)(B) provides:

> At the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(c), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.

Rule 12(b)(4)(B) requires, upon the request of the defendant, "the Government to provide notice of what, if any, evidence that the defendant is entitled to receive under Rule 16 will be used at trial so that the defendant may move to suppress such evidence." Li, 2017 WL 590275, *5. However, the defendant must identify" 'potentially suppressive evidence with specificity,' as is required to 'trigger a notice obligation' under the Rule."

The government states that Sims has failed to identify any "potentially suppressive evidence" with the required specificity, and that it has provided defendants with "Rule 16 discovery, including data from cell phones seized in the case, and will continue to do so as it obtains more evidence." In fact,

---

[2]As noted above, the government has provided the remaining defendants with early Jencks material, including summaries of interviews by agents.

as mentioned, the government is meeting its obligation to supplement and it has recently provided defendants with more discovery in this case.

Therefore, Sims' motion pursuant to Rule 12(b)(4)(B), (Doc. 558), is **DENIED**.


## III.    CONCLUSION

Based on the foregoing, the court will **GRANT IN PART** and **DENY IN PART** the eight pre-trial motions of Taylor and the twelve pre-trial motions Sims, as specified in detail above. An appropriate order will issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**Date: April 26, 2018**