# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | 3-CR-15-214 |
| v. | : | |
| | : | (JUDGE MANNION) |
| ARTHUR TAYLOR, | : | |
| | : | |
| Defendant | : | |

## **MEMORANDUM**

Before the court in this case with charges of sex trafficking, distribution of illicit drugs, interference with commerce by robbery, and felon in possession of a firearm is the pre-trial motion in limine filed by defendant Arthur Taylor, a/k/a "Arty". (Doc. 727). Taylor seeks to preclude the government from introducing at trial any evidence regarding his prior convictions, regarding M.M.'s claim that she suffered a miscarriage shortly after she was assaulted by Taylor, and regarding any claims by confidential witnesses that a .357 magnum handgun used by Jehovah Maldonado in a home invasion robbery on August 26, 2013, at 462 Clearview Drive, Long Pond, Pennsylvania, was the same firearm used by Dygunn Mitchell in a drive-by shooting on January 14, 2014, at 5014 Old Timber Road, Hamilton Township, Pennsylvania, that caused the death of Darcey Kravchenko. For the reasons set forth below, the court will **GRANT IN PART** and **DENY IN PART** Taylor's motion in limine.

1

## I. BACKGROUND[1]

On August 28, 2018, Taylor, along with Jordan Capone, were indicted and charged in a Third Superseding Indictment ("TSI"). (Doc. 690). Taylor was charged in Counts 1, 3, 4, 5, 6, 7, 8, and 9, namely: conspiracy to distribute in excess of 100 grams of heroin, crack cocaine, molly, Percocet, and marijuana, 21 U.S.C. §846; conspiracy to commit sex trafficking by force and coercion, 18 U.S.C. §1594(c); four substantive counts of sex trafficking by force and coercion, 18 U.S.C. §1591(a) and (b)(1) and 2; one count of conspiracy to interfere with commerce by robbery, 18 U.S.C. §1951(a); and one count of unlawful possession of a firearm by a convicted felon, 18 U.S.C. §922(g)(1).

On September 5, 2018, Taylor and Capone were arraigned and pled not guilty to all counts of the TSI against them. (Doc. 701).

On October 11, 2018, Taylor filed his motion in limine. (Doc. 727). Taylor simultaneously filed his brief in support of his motion. (Doc. 728). The government filed its brief in opposition on October 23, 2018. (Doc. 733). Taylor did not file a reply brief.

Upon request of defendants, the trial for Taylor and Capone was continued to January 28, 2019. (Docs. 735 & 736).

## II. LEGAL STANDARD

---

[1] Since the court stated the background of this case in its April 26, 2018 Memorandum, (Doc. 625), it will not be fully repeated herein.

Taylor's motion in limine is mainly filed pursuant to Fed.R.Evid. 404(b) and 609(a)(1)(B). The motion also seeks, in part, to exclude evidence as irrelevant. It is axiomatic that "irrelevant evidence is not admissible." Fed.R.Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed.R.Evid. 401. Even if evidence is relevant, the court can exclude it if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

Federal Rule of Evidence 404(b) precludes the admission of other crimes, wrongs, or acts "to prove the character of a person in order to show conformity therewith." However, under Rule 404(b), such evidence is admissible for legitimate evidentiary purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." "[U]nder Rule 404(b), prior act evidence is inadmissible unless the evidence is (1) offered for a proper non-propensity purpose that is at issue in the case; (2) relevant to that identified purpose; (3) sufficiently probative under Rule 403 such that its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested." United States v. Stoner, 2017 WL 4883378, *7 (M.D.Pa. Oct. 30, 2017) (citing United States v. Caldwell, 760 F.3d 267, 277-78 (3d Cir. 2014)).

3

Federal Rule of Evidence 609 pertains to the use of prior convictions for impeachment purposes and provides:

> The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
> (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
> (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant[.]

Fed.R.Evid. 609(a)(1)(B).

## III. DISCUSSION

Taylor first moves for an order precluding the government to offer any evidence at trial relating to any of his prior convictions and argues that such evidence is inadmissible. Taylor states that he has four prior New York state misdemeanor convictions that do not qualify as felony crimes under Rule 609(a)(1) or as crimes involving dishonesty under Rule 609(a)(2).[2] The government does not indicate that it intends to offer any evidence at trial regarding Taylor's four prior New York state misdemeanor convictions. As such, the court will not address any of Taylor's four prior misdemeanor convictions and it will grant Taylor's motion in limine regarding these convictions.

However, Taylor's two prior New York state drug convictions are at issue with respect to their admissibility under Rule 609(a)(1). In particular,

---

[2]Since Taylor lists his four prior New York state misdemeanor convictions in his brief, (Doc. 728 at 3 n. 1), they are not repeated herein.

Taylor states that:

> on December 2, 2003, at age 21, Taylor was arrested and charged in New York County Supreme Court with Criminal Sale of a Controlled Substance and sentenced on February 1, 2005, to one year's imprisonment and a six-month license suspension. Also, on January 15, 2005, at age 22, Taylor was arrested and charged with Criminal Possession of a Controlled Substance-Cocaine and sentenced on March 14, 2005, to one year's imprisonment and a six-month license suspension.

The government does not indicate that it seeks to introduce Taylor's prior felony convictions during its case-in-chief, and it appears that it only intends to introduce Taylor's 2005 drug convictions for impeachment purposes if he testifies. Specifically, the government contends that if Taylor testifies at trial, it should be allowed to impeach him by introducing evidence of his two felony convictions for controlled substances even though they did not occur in the past ten years. Taylor's two prior drug convictions in 2005 were crimes punishable by imprisonment for more than one year. Taylor's 2005 prior drug convictions are not *crimen falsi* crimes. As such, these crimes are "only admissible if they qualify under Rule 609(a)(1)", i.e., crimes punishable by more than one year, and are not too remote. Jackson v. City of Pittsburgh, 2010 WL 2511380, at *2 (W.D.Pa. June 17, 2010).

"Rule 609 permits evidence of a prior felony conviction to be offered to impeach a testifying witness. However, when the testifying witness is also the defendant in a criminal trial, the prior conviction is admitted only 'if the probative value of the evidence outweighs its prejudicial effect to that defendant.'" U.S. v. Caldwell, 760 F.3d 267, 286 (3d Cir. 2014) (citing

Fed.R.Evid. 609(a)(1)(B)). The Third Circuit has held that this Rule "reflects a heightened balancing test" with a "predisposition toward exclusion" and, that "[a]n exception [to exclusion of the evidence] is made only where the prosecution shows that the evidence makes a tangible contribution to the evaluation of credibility and that the usual high risk of unfair prejudice is not present." Id. (citation omitted). "When offering a prior conviction to impeach a testifying defendant, the government bears the burden of satisfying the heightened balancing test set out in Rule 609(a)(1)(B)." Id. at 289.

The Third Circuit has "recognized four factors that should be considered when weighing the probative value against the prejudicial effect under this heightened test." Id. at 286. The four factors are: "'(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the [defendant's] testimony to the case; [and] (4) the importance of the credibility of the defendant.'" Id. at 286 (citing Gov't of Virgin Islands v. Bedford, 671 F.2d 758, 761 n. 4 (3d Cir. 1982)). The court will now address each factor.

In considering the first factor regarding the kind of crime involved, "courts consider both the impeachment value of the prior conviction as well as its similarity to the charged crime." Id. "The impeachment value relates to how probative the prior conviction is to the witness's character for truthfulness." Id. "With respect to the similarity of the crime to the offense charged, the balance tilts further toward exclusion as the offered impeachment evidence becomes more similar to the crime for which the defendant is being tried." Id.

6

Taylor argues that all of the *Bedford* factors should be resolved in favor of excluding his two prior felony drug convictions which occurred over ten years ago for impeachment purposes. The government contends that both of Taylor's 2005 drug convictions are admissible to impeach him if he testifies at trial. The government cites to several cases for support. (*See* Doc. 733 at 3-4).

In considering the first *Bedford* factor, i.e., the types of prior convictions involved, Taylor has been charged with conspiracy to distribute in excess of 100 grams of heroin, crack cocaine, molly, Percocet, and marijuana. Taylor contends that the court should preclude any evidence regarding his two prior New York state drug convictions since his prior crimes are too similar to the drug offense charged in Count 1."Generally, where the crime is punishable by a sentence of more than one year imprisonment, or if the crime involved required proof of a dishonest act or false statement by the witness, such evidence must be admitted for impeachment purposes." Klatch-Maynard v. Sugarloaf Tp., 2013 WL 1789744, *3 (M.D.Pa. April 26, 2013) (citing Fed.R.Evid. 609; Green v. Bock Laundry Mach. Co., 490 U.S. 504, 527, 109 S.Ct. 1981 (1989)).

Taylor's prior convictions at issue are two felony convictions for controlled substances which occurred over ten years ago. Taylor states that "[b]ecause the admission of [his] prior drug convictions will show a criminal disposition on his part based upon which the jury may find him guilty of the crimes charged, the similarity of the crimes weighs heavily against the

7

admission of [his] prior drug convictions." The government contends that Taylor's felony drug convictions are admissible stating that "prior drug convictions are highly relevant for impeachment purposes." In this case, Taylor is charged with conspiracy to distribute various drugs. Taylor's prior state convictions were for criminal sale of a controlled substance and criminal possession of a controlled substance-cocaine. Here the government concedes that Taylor's prior drug convictions are similar to his instant offense drug offense but it points out that this fact does not bar the admission of his prior convictions.

The Third Circuit in U.S. v. Murphy, 172 Fed.Appx. 461, 463 (3d Cir. 2006), held that drug convictions are admissible at trial for impeachment purposes under 609(a)(1) in a case where the defendant is charged with a drug offense and that "other Circuit Courts have also held that prior drug convictions in particular have probative value for impeachment purposes." (citing United States v. Cordoba, 104 F.3d 225, 229 (9th Cir.1997) ("holding that a prior conviction for possession with intent to distribute cocaine is admissible under Rule 609"); United States v. Hernandez, 106 F.3d 737, 739–40 (7th Cir.1997) ("holding that prior convictions for possession of cocaine and marijuana are admissible to impeach defendant")); United States v. Santiago-Rivera, 2017 WL 4551039 (M.D.Pa. Oct. 12, 2017) (this court found that the majority of the *Bedford* factors weigh in favor of allowing the government to use defendant's prior felony narcotics convictions to impeach his credibility if he testified in his pending case in which he was charged with

8

interference with commerce by robbery and felon in possession of a firearm).

Further, as the government indicates, Taylor is also charged with sex trafficking offenses, conspiracy to commit sex trafficking, unlawful possession of a firearm by a convicted felon, and conspiracy to interfere with commerce by robbery in this case which are not similar to his prior drug convictions. No doubt that the potential prejudicial impact of a defendant's prior felony convictions is lessened if they are dissimilar to his other pending charges. *See* Caldwell, 760 F.3d at 286.

Further, the government states to limit any potential prejudice to Taylor the court can direct it to only generally refer to Taylor's prior "felony convictions" without referencing the specific nature of these drug crimes.

Therefore, the first factor weighs in favor of admitting Taylor's prior drug convictions for impeachment purposes.

The second factor, the age of the two prior convictions, weighs against admissibility for impeachment purposes since Taylor's state drug convictions occurred over ten years ago and are clearly not timely under Rule 609. Thus, his prior convictions are presumptively excluded unless a special balancing of their probative value compared to their prejudicial effect under Rule 609(b) overcomes the presumption. Id. at 287. The government argues that since Taylor did not have an unblemished record after his prior drug convictions, this weighs in favor of defeating the presumption based on the age of the prior convictions. The government relies upon Caldwell, id., in which the Third Circuit stated "the probative value of an older conviction may remain

undiminished if the defendant was recently released from confinement or has multiple intervening convictions, both of which suggests his character has not improved." In particular, the government represents that after his 2005 convictions, Taylor was convicted in 2006 for criminal possession of a weapon and, in 2012 he was convicted of criminal possession of marijuana.

The court finds that the probative value of Taylor's 2005 convictions remains undiminished since his two subsequent convictions over a short period of time after 2005 indicates that he has not abandoned his prior ways of criminal behavior. As such, the second factor weighs in favor of allowing the government to impeach Taylor with his 2005 convictions if he testifies.

"The third factor inquires into the importance of the defendant's testimony to his defense at trial." Caldwell, 760 F.3d at 287. "If it is apparent to the trial court that the accused must testify to refute strong prosecution evidence, then the court should consider whether, by permitting conviction impeachment, the court in effect prevents the accused from testifying." Id. (citation omitted). However, "[if] the defense can establish the subject matter of the defendant's testimony by other means, the defendant's testimony is less necessary, so a prior conviction is more likely to be admitted." Id. at 288 (citation omitted). Taylor states that "Counsel for the Government has advised defense counsel that the Government may call thirty witnesses to testify at trial" and that "Taylor may need to testify in his own behalf, and such need to testify weighs against the use of his prior convictions." He also states that if he testifies, "his credibility may be important to the case." There has however

been no specific claim by Taylor that his testimony in this case may be important to demonstrate the validity of his defense and that it may be "fundamentally important to his defense." Id. at 289.

Additionally, the government states that based on Taylor's recorded statements to the FBI in this case and his admissions, it is unclear as to how his testimony would be important to his defense.

As such, the court will balance this factor as weighing in favor of the admission of Taylor's prior convictions.

"The [fourth] factor concerns the significance of the defendant's credibility to the case. 'When the defendant's credibility is a central issue, this weighs in favor of admitting a prior conviction.'" Id. at 288 (citation omitted). "Where a case is reduced to a swearing contest between witnesses, the probative value of conviction is increased." Id. (citation omitted). In this case, the testimony of Taylor will create a credibility contest between himself and the government's witnesses. The jury will have to decide between Taylor's version of events and those provided by the witnesses presented by the government. Also, if defendant testifies, he places his credibility directly at issue. *See* Beros, 833 F.2d at 463-64. Thus, the credibility of all of the witnesses will be crucial to establish the government's case as well as Taylor's defenses.

As such, the court finds that the fourth factor weighs in favor of admitting Taylor's prior convictions.

Thus, the *Bedford* factors weigh in favor of allowing the government to

use Taylor two 2005 felony narcotics convictions to impeach his credibility if he testifies. The court finds that the Government has met its burden of showing that the probative value of Taylor's stated prior convictions outweighs its prejudicial effect under Rule 609(a)(1)(B). All of the four factors discussed above weigh in favor of admission of Taylor's prior convictions. Additionally, the government's use of Taylor's stated prior convictions will be limited to cross-examination, if he testifies. However, as a safeguard, the court will only allow the government to refer to prior "felony convictions" of Taylor without stating the nature of the convictions. Further, the court will give a limiting instruction to the jury and direct the jury to consider Taylor's prior convictions for impeachment purposes only. *See* U.S. v. Cherry, 2010 WL 3156529, *7 (The court found that a limiting jury instruction would mitigate any potential prejudice to defendant.).

Therefore, the court will **DENY** Taylor's motion *in limine* regarding the exclusion of any evidence related to his two felony narcotics convictions from 2005 only for purposes of impeachment if he testifies.

Next, the court considers Taylor's motion to preclude any evidence regarding the use of a firearm in the Kravchenko homicide. Specifically, "Taylor moves this Court under Federal Rules of Evidence 401 and 403 for an order excluding any evidence, references to evidence, testimony or argument relating to the allegations or claims made by certain confidential government witnesses that a .357 magnum handgun used by Jehovah Maldonado in a

12

home invasion robbery on August 26, 2013, at 462 Clearview Drive, Long Pond, Pennsylvania, was the same firearm later used by Dygunn Mitchell in a drive-by shooting on January 14, 2014, at 5014 Old Timber Road, Hamilton Township, Pennsylvania, that caused the death of Darcey Kravchenko." Taylor argues that the introduction of "evidence that the .357 magnum handgun used by Jehovah Maldonado in a home invasion robbery on August 26, 2013, was also used in the Kravchenko homicide gives rise to the inference that the Defendants, or either of them, are implicated or suspected in the murder." He contends that such evidence is "irrelevant and immaterial" to the issues in his case and that it would be "highly inflammatory and prejudicial." Taylor further states that such evidence should be precluded under FRE 403 since "[a]ny probative value of such evidence is substantially outweighed by the danger of undue prejudice."

"To be admissible under Rule 404(b), evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it." United States v. Green, 617 F.3d 233, 249 (3d Cir. 2010).

In addition to the drug and sex trafficking conspiracies charged in the TSI, Taylor is charged in Count 8 of the TSI with conspiracy to interfere with commerce by robbery. In Count 8, the government alleges that on August 26, 2013, Taylor ordered six people to commit an armed robbery of a residence

13

in the Emerald Lakes Development in Tobyhanna Township, Monroe County, Pennsylvania, because it supposedly contained a large amount of marijuana and cash. In Count 9 of the TSI, Taylor is charged with unlawful possession of a firearm by a convicted felon, alleging that he knowingly possessed a .38 caliber handgun and a .357 magnum and that these firearms were used in the home robbery.

The government states that while Taylor seeks to exclude from evidence testimony linking the .357 magnum he possessed to a homicide committed by Black P-Stone members in Monroe County, it has the burden to prove that Taylor possessed all of the specific firearms charged in the indictment, including the .357 magnum. The government states to meet its burden of proof it must rely on the testimony of cooperating witnesses to prove that Taylor possessed all of the firearms specified in the indictment. The government explains that its witnesses will trace the .357 gun from Taylor to other members of the gang who used it during the conspiracy to commit the home invasion robbery charged in Count 8 of the indictment, back to Taylor and then to other members of the gang who used it to commit the homicide. Ultimately, the government states that the gun then went to Capone who disposed it. The government states that "the ability of its witnesses to link this specific gun to Taylor is based on the gun's involvement in the two incidents described above, including the homicide."

Further, as the government points out, "[t]he 'Manner and Means'

14

section of the [TSI] alleges that the defendant Arthur Taylor participated in a street gang known as the Black P-Stones who obtained and distributed illegal drugs, maintained, possessed and carried firearms in connection with drug trafficking activities, and who committed home invasions and robberies to steal drugs and money from other drug dealers." The TSI also alleges that Taylor and his co-conspirators " maintained, possessed, and carried firearms in connection with their drug trafficking activities."

The government proffers that at trial "cooperating witnesses will testify that as members of the Black P-Stones they were ordered by the gang's leadership to rob other drug dealers."

Additionally, the government proffers, (Doc. 708 at 9), that its evidence at trial will show further connections between Counts 8 and 9 with the other counts based on the following:

> The home invasion robbery scheme occurred within the time frame of the drug trafficking activities of Taylor, Capone, and the Black P-Stones street gang as alleged in the indictment and involved the use of a firearm that cooperating witnesses say Taylor provided to the Black P-Stone members who did the home invasion. Cooperating witnesses will testify that Jordan Capone maintained guns for the Black P-Stones and that Arthur Taylor provided a gun to the gang members who committed the home invasion robbery charged in Count 8. Taylor in his own recorded statement to the FBI admitted to possessing a gun that the P-Stones called "Jordan," admitted that other members of the Black P-Stones asked him for the gun on the day of the home invasion robbery, admitted to possessing two shotguns, and stated that the P-Stones obtained guns by trading heroin for them.

The court will allow the government to present evidence that the .357 handgun was used by Maldonado during the August 2013 home invasion

robbery. However, the court will grant Taylor's motion to preclude the government from offering any evidence that the .357 handgun was later used in January 2014 in the drive-by shooting of Kravchenko since this is too prejudicial and not essentially for the government to prove its charges against Taylor.

Lastly, Taylor moves for an order excluding any evidence, testimony or argument relating to M.M.'s claim that she suffered a miscarriage shortly after she was assaulted by Taylor. Taylor contends that "the Government may seek to introduce testimony by M.M. that while she was working as a prostitute at the Quality Inn in Stroudsburg, Pennsylvania, she argued with Taylor, and he choked her and threatened to drown M.M. in the bath tub." He also states that "M.M. claims she was pregnant at the time of this incident and suffered a miscarriage soon thereafter." Taylor argues that any evidence that M.M. suffered a miscarriage should be excluded since it is not relevant, material or competent. Taylor points out that if the government sought to introduce such evidence at trial to show that he caused M.M. to have a miscarriage, it would have to present expert medical testimony and M.M., an alleged prostitute and heroin user, is not qualified to offer any opinion testimony as to the cause of her miscarriage. He states even if the government could prove causation, any evidence that M.M. suffered a miscarriage should still be precluded since this evidence is not relevant to any issue in the case.

Initially, the government states that it does not intend to offer any testimony by M.M. that Taylor's assault of her caused her to have a

miscarriage. Rather, the government states that it intends to have M.M. testify that she was pregnant with Taylor's baby, that while she was working for him and the P-Black Stones as a prostitute she was assaulted by Taylor, and that sometime after the assault she suffered a miscarriage. The government contends that M.M.'s testimony will be offered to show a chronology of events, and that this evidence is material and relevant since M.M. who is a victim and a witness, will testify that after this incident, she broke off her relationship with Taylor and would not re-establish a relationship with him despite his repeated attempts for her to do so.

No doubt that the stated proffered testimony of M.M. is highly prejudicial to Taylor and that M.M. is not qualified to testify that Taylor's alleged assault caused her to have a miscarriage. Further, under FRE 404(b), evidence of a "crime, wrong or other act" to prove the defendant's character is not admissible. United States v. Senat, 698 Fed.Appx. 701, 705 (3d Cir. 2017). However, "relevant evidence with a proper evidentiary purpose may be admitted." Id. (citation omitted). Here, M.M.'s testimony regarding Taylor's alleged uncharged conduct will not be offered to prove Taylor's character. Nor is her testimony offered to show that Taylor is prone to commit crimes or that he is a bad person. Rather, the testimony is offered and is relevant as to show why M.M. parted ways with Taylor and the P-Black Stones and when she did so.

The court in balancing the probative value of the testimony with its prejudicial effect under FRE 403 will allow M.M. to testify that she was

17

pregnant with Taylor's baby when she was working for the P-Black Stones as a prostitute and that he assaulted her which lead to her break with Taylor and the gang. M.M.'s testimony will help the jury understand her motivations for testifying and why she took the actions she did and, thus it bears on her credibility. The court will not allow M.M. to testify that sometime after the alleged assault by Taylor she had a miscarriage since this is too prejudicial and the jury may believe that Taylor caused the miscarriage without any proof of causation.

**IV. CONCLUSION**

Based on the foregoing, the court will **GRANT IN PART** and **DENY IN PART** Taylor's motion in limine. **(Doc. 727)**. An appropriate order will issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: November 7, 2018**
O:\Mannion\shared\MEMORANDA - DJ\CRIMINAL MEMORANDA\2015 CRIMINAL MEMORANDA\15-0214-05.wpd